## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRANDON ERWIN,

      Petitioner,

v.                                CASE NO. 8:10-cv-2781-T-30EAJ
                                    Criminal Case No. 8:06-cr-39-T-30EAJ

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER

**BEFORE THE COURT** are grounds one and two[1] of Petitioner's Motion to Vacate,

Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 alleging ineffective assistance

of counsel.  (CV Dkt. #1).  The court conducted an evidentiary hearing on grounds one and

two on July 20, 2011.  Based on both the record and the testimony presented at that hearing,

the court finds that both grounds lack merit and warrant no relief.

**Ground One**

      Petitioner contends that his trial attorneys rendered ineffective assistance by "failing

to communicate plea offers, to explore plea offers, to negotiate a plea, to explain to

[Petitioner] his options . . . [and by] affirmatively misadvising [Petitioner] about debriefing,

---

[1] Grounds three and four of the Section 2255 motion were denied by previous order entered on May 31, 2011. (CV Dkt. #10).

pleading guilty to the original indictment, and not negotiating a plea prior to and after the superseding indictment was returned."  (CV Dkt. #1, p, 4).

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.");  *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.  *Strickland* requires that

"in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland*, 466 U.S. at 691-92.  To meet this burden, Petitioner must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on proceeding to trial.  *Hill v. Lockhart*, 474 U.S. 59 (1985).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.  Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Petitioner's ground one lacks merit.  Petitioner testified at the evidentiary hearing that he initiated plea discussions with his attorneys both before and after entry of the superseding indictment in an effort to avoid the "resulting in death" charge (Count Two of the superseding indictment) which carried a minimum mandatory sentence of twenty years imprisonment.[2]  (CV Dkt. #16, pp. 7-9).  He testified that his trial counsel advised him that entering a plea was not an option because "the [p]rosecution was not interested in negotiating a plea agreement under the 20-year mandatory minimum."  (CV Dkt. #16, pp. 10-11).  Petitioner further testified on cross-examination that he was not aware of any plea offer

---

[2]  Petitioner was originally charged by an indictment with two counts of possession with intent to distribute MDMA ("ecstasy") and one count of possession with intent to distribute methadone.  (CR Dkt. #14).  A superseding indictment later charged Petitioner with conspiracy to distribute and possession with intent to distribute cocaine (Count One), distribution of methadone and cocaine resulting in the death of Andrew Culver (Count Two), distribution of MDMA ("ecstasy") (Counts Three and Five), and distribution of methadone (Count Four).  (CR Dkt. #54).  A jury convicted Petitioner of all charges and he received a minimum mandatory sentence of twenty years imprisonment on Count Two and concurrent terms of twenty years imprisonment on each of the other four convictions.  (CR Dkt. #113).

extended to him by the Government that counsel failed to relay to him.[3]  (CV Dkt. #16, p. 30).

Trial counsel[4] testified that he repeatedly discussed with Petitioner the possibility of entering a plea but Petitioner continually refused to admit the facts underlying Count Two (the "death resulting" charge).[5]  Counsel further testified that any chance of a sentence

---

[3] Petitioner also admitted on cross-examination that no one indicated to him that the Government was interested in his cooperation or in pursuing a 5K1.1 motion.  (CV Dkt. #16, pp. 31-32).

[4] Petitioner was represented at trial by two attorneys.  Only one of those attorneys, Robert West, testified at the evidentiary hearing.

[5] Counsel testified:

Q:     So, after the superseding indictment was filed and then you were, I guess, primarily responsible for representing him at that point, did you discuss with him the possibility of entering a plea to [Count Two]?

. . .

A:     Yes.

Q:     And do you know how many times you may have discussed that?

A:     I don't recall specifically how many times we talked about pleading.  I know that we talked a lot about the mandatory minimum, if he were convicted of it, ways to avoid the mandatory minimum through substantial assistance; but that - - and that the Government had said to me and to [co-counsel] that they won't resolve the case without a plea to the overdose count and that [Petitioner] has to admit the facts that support the overdose count.; that unless he's willing to do that, there is no possibility of a plea was my take away from that conversation and that was communicated to Mr. Erwin.

       So the conversations became very focused on what happened surrounding Andy Culver's death and would he, could he admit the facts sufficient to get a plea entered and to get the benefit of come [sic] cooperation.

Q:     Was he able to - - I mean, did he indicate that he would be willing to do that?

A:     Mr. Erwin indicated he would be - - well, let me rephrase that.  Mr. Erwin, through pretrial preparation and through trial, never indicated that he was able - - or would never indicate responsibility for providing methadone to Andrew Culver.

(CV Dkt. #16, pp. 48-49).

reduction based on Petitioner's substantial assistance was also predicated upon Petitioner admitting the facts underlying Count Two.[6]

The court finds trial counsel's testimony credible. Counsel fulfilled his Sixth Amendment responsibility to discuss with Petitioner the options of pleading guilty or proceeding to trial. Counsel's testimony establishes that he explained Petitioner's plea options to him, including the right to enter an open plea or plead not guilty. The Government did not offer Petitioner any type of plea agreement that did not require Petitioner to admit the underlying facts surrounding Andrew Culver's death as alleged in Count Two of the superseding indictment. Petitioner remained adamant that he would not admit such facts or accept responsibility for the conduct alleged in Count Two. Petitioner fails to establish that counsel did not advise him about any potential plea offer that would have resulted in Petitioner's not facing the twenty-year minimum mandatory sentence and fails to establish that counsel did not advise him that he could enter an open plea. Petitioner likewise fails to

---

[6] Counsel testified:

Q:    Did he - - did Mr. Erwin tell you that he had other information of [sic] the employees, managers of the Blue Martini?

A:    Yes.

Q:    But you didn't think that would have been useful for potentially giving substantial assistance?

A:    Well, no, I didn't. I didn't unless he was willing to admit facts surrounding the overdose count and provide the source of the methadone. I attempted to negotiate with [the prosecutor] a plea that didn't include him admitting the facts for Count 2, but [the prosecutor] rejected that repeatedly; and at one point, I even sent an e-mail and said, "We'd like you to provide the identity of the person who was the source of the methadone for the December 13th deal," but the Government's position was always consistent that he had to admit the facts under Count 2 before we could have any meaningful discussions.

(CV Dkt. #16, pp. 51-52).

demonstrate that absent counsel's alleged error, he would have foregone a trial and entered a guilty plea to all charges, including Count Two. Petitioner's testimony to the contrary is not credible. Accordingly, Petitioner fails to satisfy the two-pronged *Strickland* test. *See Strickland v. Washington*, 466 U.S. at 691-92. Ground one warrants no federal habeas relief.

**Ground Two**

Petitioner contends that his trial attorneys rendered ineffective assistance by conceding Petitioner's guilt during closing argument at trial. Specifically, he contends that counsel erroneously conceded his guilt to the "death resulting" portion of Count Two of the superseding indictment.[7] Petitioner cites seven portions of counsel's argument to support his claim:

1.   "Brandon Erwin is going to prison without being convicted of giving drugs to Andrew Culver that resulted in his death." [CR Dkt. #146, p. 30, lines 11-13].

2.   "You don't have to ever get to the point of whether Brandon Erwin is innocent."[8] [CR Dkt. #146, p. 31, lines 13-15].

---

[7] Petitioner testified on cross-examination at the evidentiary hearing:

Q:   And before I ask you the specific questions, let me ask you, Mr. Erwin, you testified on direct that you believed it was reasonable for [counsel] to concede your guilt with respect to Counts 1, 3, 4, and 5; is that correct?

A:   Yes, sir.

Q:   And your problem with [counsel]'s performance is he conceded guilt, you argue, as to Count 2, which is the death-resulting count? Is that right?

A:   Yes, sir.

(CV Dkt. #16, pp. 17-18).

[8] Counsel's actual statement as reflected in the transcript of his closing argument was:

(continued...)

3.      "I agree that the evidence is strong and the evidence is suggestive that Brandon Erwin provided drugs to Andrew Culver.  No question about that in terms of the evidence."  [CR Dkt. #146, p. 32, lines 15-17].

4.      "Brandon Erwin became the focus because he was working the VIP lounge [at the Blue Martini] and it was clear that you could get drugs."  [CR Dkt. #146, p. 33, lines 6-8].

5.      "Certainly if someone is - - is having a problem with cocaine, a friend of yours, if he's obviously - - the term might have been 'geeked out,' if he's using cocaine, the last thing you want to do is to give him a methadone, I think medically.  The evidence suggests that's what happened.  That's what Brandon Erwin said, is that he apparently realized that Andrew Culver was using cocaine and he gave him [a] methadone to help him sort of calm down."  [CR Dkt. #146, p. 35, lines 14-21].

6.      "I'm sorry, but I'm digressing a little bit.  I do think, though, to put all of this in context, to understand the flavor is important, not so much because there's any question of Mr. Erwin's guilt on those other drug-related offenses, Counts 2, 3, and 4, Count 1, he did that stuff.  He was selling drugs."  [CR Dkt. #146, p. 44, lines 8-13].

7.      "You elect guilty or not guilty.  In all candor, it's reasonable for you to say 'guilty.'  There seems to be evidence, compelling evidence, if you agree, of methadone."  [CR Dkt. #146, p. 55, lines 4-6].

(CV Dkt. 12, pp. 1-2).

Petitioner testified on direct examination at the evidentiary hearing that he did not discuss with counsel the possibility of conceding guilt to any of the charges.  (CV Dkt. #16, p. 4).  He admitted, however, that he thought that conceding guilt to all of the charges except

---

[8](...continued)
You don't have to ever get to the point, nor could you, I would think, in this case, get to the point of whether Brandon Erwin is innocent.

(CR Dkt. #146, p. 31, lines13-15).

Count Two would have been a reasonable tactic.  On cross-examination Petitioner admitted that statements 1, 3, 4, and 5 cited above did not concede his guilt to Count Two.  (CV Dkt. #16, pp. 19-20, 22-25).

As to statement 2 ("You don't have to ever get to the point of whether Brandon Erwin is innocent."), Petitioner testified that he believed that the statement questioned his innocence on all of the charges, including Count Two.  The record shows that counsel made this statement in the course of his argument about reasonable doubt:

> What we have established and lived with now for a couple of centuries is the idea that what a jury doesn't do is a jury doesn't decide whether the person is guilty or innocent. That's not a decision that the jury makes.
>
> What the jury decides simply does - - does the proof convince you beyond a reasonable doubt that the person committed the crime that they're charged with or doesn't it?  **You don't have to ever get to the point, nor could you, I would think, in this case, get to the point of whether Brandon Erwin is innocent.**  It's really a question of, "Are you satisfied beyond and to the exclusion of a reasonable doubt that there's no other way this could have happened other than the Government's theory?"

(CR Dkt. #146, p. 31, lines 5-18) (emphasis added).  Statement 2, considered in context with the rest of counsel's argument, makes no concession of Petitioner's guilt to any of the charges. Rather, the statement was meant to explain the standard of proof the jury was to apply is reaching its verdict.

As to statement 7 ("You elect guilty or not guilty.  In all candor, it's reasonable for you to say 'guilty.'  There seems to be evidence, compelling evidence, if you agree, of methadone."), Petitioner testified that he "view[ed] the word 'guilty' as being all-encompassing."  (CV Dkt. #16, p. 28).  The verdict form on Count Two (CR Dkt. #105,

question 3) required the jury to decide whether Petitioner was guilty or not guilty of distributing drugs to Andrew Culver.  If the jury found Petitioner guilty of such distribution, the jury was then required to consider whether Petitioner distributed cocaine and/or methadone to Culver (CR Dkt. #105, question 4) and, if so, whether the drugs that Petitioner distributed to Culver resulted in Culver's death  (CR Dkt. #105, question 5).[9]  The record shows that counsel made the statement Petitioner now challenges in the course of discussing the jury's task of determining whether Petitioner was guilty or not guilty of the distribution portion of Count Two and not the "death-resulting" portion of that charge:

> Okay.  Count 2 is the drug distribution offense to Andrew Culver.  The first part of this only deals with whether Brandon Erwin distributed drugs.  It has nothing to do with the death.  At this point, it doesn't ask you what drug we're talking about.
>
> **You select guilty or not guilty.  In all candor, it's reasonable for you to say "guilty."  There seems to be evidence, compelling evidence, if you agree of [sic] methadone.**  There was some discussion about that on the tapes.  What we say isn't evidence.  You look at the evidence, and you make your own conclusion.  I don't want to suggest to you that - - that there are conclusions that you have to make, because

---

[9] Questions 4 and 5 of the verdict form read:

4.      We, the Jury, having found the Defendant, BRANDON ERWIN, guilty of the offense charged in Count Two, further find with respect to that count that he distributed the following controlled substance or substances to Andrew Culver:

Methadone:        Yes ✓  No___
Cocaine:             Yes ✓  No___

5.      We, the Jury, having found the Defendant, BRANDON ERWIN, guilty of the offense charged in Count Two, further find that the controlled substance or substances that he distributed to Andrew Culver:

Resulted in Andrew Culver's death:              ✓
Did not result in Andrew Culver's death:   ___

(CR Dkt. #105).  Petitioner testified at the evidentiary hearing that he had not seen the verdict form and did not have a copy of it when he prepared his Section 2255 motion.  (CV Dkt. #16, p. 27).

every decision that you make is yours based upon your review and the consideration of the evidence.

. . .

Once you go past the question of the distribution you then go to the question of what drug. Was it methadone? Was it cocaine? It could be both. I mean, that's a choice. You could say yes to one, no to the other, yes to both or no to both and if you decide that one or the other drugs were distributed to Andrew Culver by Brandon Erwin, then you go to the next one, the one this case is all about.

Now, when I talked with you earlier about the difference between guilty or not guilty being the difference between in our system of law not guilty and innocent, but guilty and not proven guilty. I use that illustration, especially with regard to this decision, because the language might suggest that you would have to make a decision that the distribution of the drugs to Andrew Culver, the ingestion of those actual drugs, that he died because of the actual drugs that Brandon Erwin gave him resulted in his death. If all of those connections are made that satisfies you beyond a reasonable doubt that it couldn't have happened any other way, then you could say that resulted in Andrew Culver's death.

If not, if you're not completely convinced beyond a reasonable doubt that all of those connections are made in light of all of this medical testimony, in light of the difference of opinions, in light of the circumstances in the room, in light of - - well, a reasonable doubt could be based on the evidence that there's just not enough evidence to convince you beyond a reasonable doubt. It could be based on a conflict in the evidence. There could be unreconciled conflicts that you say, "I'm not sure." It could be based on the evidence, lack of evidence, or a conflict in the evidence.

So, when you make that choice here, you're not choosing between whether the drugs resulted in his death - - and they did not result in his death - - what you're really saying is, "It resulted in his death," or, "We don't know. We're not sure."

You don't have to find it didn't result in his death because it could have. You know, that's one of the possibilities in this case, is, in fact, that it could have. That's not good enough. That's not good enough for you to check that box. You have to know that it couldn't have happened any other way. So, when you check that box that says, "Did not result in Andrew Culver's death," all you're saying is, "We don't know for sure. We don't know for sure."

(CR Dkt. #146, pp. 54-57) (emphasis added).  The record belies Petitioner's contention that counsel conceded Petitioner's guilt on Count Two in this portion of his closing argument.

In statement 6 counsel did, as Petitioner contends, mention Count Two:

"I'm sorry, but I'm digressing a little bit.  I do think, though, to put all of this in context, to understand the flavor is important, not so much because there's any question of Mr. Erwin's guilt on those other drug-related offenses, Counts 2, 3, and 4, Count 1, he did that stuff.  He was selling drugs."

(CR Dkt. #146, p. 44, lines 8-13).  Arguably this statement concedes Petitioner's guilt on Counts One, Two, Three, and Four.  As noted above, the verdict form on Count Two included three separate questions for the jury's consideration.  The first question required the jury to decide whether Petitioner was guilty or not guilty of distributing drugs to Andrew Culver.  The verdict form on Counts One, Three, and Four also required the jury to decide whether Petitioner was guilty or not guilty of the other charged drug offenses (i.e., conspiracy to distribute cocaine, distribution of MDMA ("ecstasy"), and distribution of methadone).  To the extent that counsel's statement included Count Two, it appears that counsel intended to maintain credibility with the jury by admitting that Petitioner was guilty of selling drugs, a strategy Petitioner admitted was reasonable in light of the evidence presented at trial.  (CV Dkt. #16, p. 5, lines 19-22).  Counsel's mention of Count Two appears to refer to the *drug distribution* portion of the charge and not to the "death resulting" portion.[10]

---

[10]  Counsel for the Government noted during the evidentiary hearing that the question presented to the jury in the verdict form for Count Two did not ask the jury to indicate whether Petitioner was guilty or not guilty of Culver's death.  The "death resulting" question asked them to decide whether the drugs that Petitioner distributed to Culver did

(continued...)

To the extent that the statement can be read to include the "death resulting" portion of the charge, counsel's inclusion of Count Two in his statement appears to be an inadvertent slip of the tongue.   Counsel throughout the trial, from his opening statement through the entirety of his closing argument, argued that Petitioner was not guilty of causing Andrew Culver's death.   Petitioner presents no evidence, and the record does not show, that counsel's misstatement confused or misled the jury to believe that counsel conceded that Petitioner was guilty of the "death resulting" portion of Count Two.

Even assuming, *arguendo*, that counsel performed deficiently by making any of the statements Petitioner challenges, Petitioner fails to demonstrate that any of the statements resulted in prejudice.   In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'"   *Chandler v. United States*, 218 F.3d at 1314.   'The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take."   *Van Poyck v. Fla. Dept. of Corr.,* 290 F.3d 1318, 1322 (11th Cir. 2002).   Petitioner must overcome a presumption that the challenged conduct was a matter of strategy.   *Strickland v. Washington*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56,59 (6th Cir. 1990).   "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on

---

[10](...continued)
or did not result in Culver's death.   Consequently, the jury could have found Petitioner guilty of the drug distribution portion of Count Two  without finding that the distribution resulted in Culver's death.

ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of the conduct decides an ineffectiveness claim. *Strickland v. Washington*, 466 U.S. at 690.

Petitioner fails to demonstrate that trial counsel's performance fell outside the bounds of reasonable professional judgment. *Waters v. Thomas*, 46 F.3d at 1512; *Chandler v. United States*, 218 F.3d at 1314. Petitioner is not entitled to relief on Ground Two of his motion to vacate because he fails to satisfy *Strickland's* requirements.

It is therefore ORDERED AND ADJUDGED that Grounds One and Two of Petitioner's motion to vacate are DENIED. The Clerk is directed to enter judgment for Respondent and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484

14

(2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE and ORDERED in Tampa, Florida on September 16, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel/Parties of Record